|  |  |
|---|---|
| _____ ) | |
| CASSANDRA M. MENOKEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-0084 (ABJ) |
| ) | |
| KATHLEEN MCGETTIGAN ) | |
| *Acting Director, United States* ) | |
| *Office of Personnel Management*, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is plaintiff Cassandra M. Menoken's motion under Federal Rule of Civil Procedure 59(e) for reconsideration of the Court's August 11, 2017 order granting defendants' motion to dismiss. Pl.'s Mot. to Alter or Amend J. [Dkt. # 19] ("Pl.'s Mot."); Mem. of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 20-1] ("Pl.'s Mem.").[1] The Court previously concluded that plaintiff's retaliation claims against defendants the United States Office of Personnel Management ("OPM") and the Social Security Agency ("SSA") were precluded under the

---

[1] Defendants opposed the motion on September 22, 2017. Defs.' Opp. to Pl.'s Mot. [Dkt. # 21] ("Defs.' Opp."). On October 2, 2017, plaintiff appealed this Court's ruling on the motion to dismiss to the D.C. Circuit. Notice of Appeal [Dkt. # 22]. The D.C. Circuit ordered the case to be held in abeyance, and it requested the district court to notify the Circuit "promptly upon the conclusion of its proceedings." Order [Dkt. # 24]. A district court has jurisdiction over a Rule 59(e) motion while an appeal is pending. *See Hoai v. Vo*, 935 F.2d 308, 311–12 (D.C. Cir. 1991) (observing that a timely Rule 59(e) motion "render[s] ineffective any notice of appeal filed before their disposition"); Fed. R. App. P. 4(a)(4) ("[T]he time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion . . . to alter or amend the judgment under Rule 59."); *see also Leadership Conference on Civil Rights v. Gonzales*, 421 F. Supp. 2d 104, 107 (D.D.C. 2006) ("A district court may deny, but cannot grant, a Rule 59(e) motion pending after the filing of a notice of appeal.").

doctrines of *res judicata* and issue preclusion. *Menoken v. McGettigan*, No. 16-0084, 2017 WL 3479048, at *1, *4–7 (D.D.C. Aug. 11, 2017) ("*Menoken II*").

Plaintiff contends that the Court misunderstood her claim by overlooking alleged facts, and she maintains that the Court's decision "does not accord with equity principles and applicable law." Pl.'s Mem. at 2–3. Because plaintiff has not identified any proper basis for the Court to alter or set aside the judgment, the motion will be denied.

## BACKGROUND

The factual and procedural background of this case, the nature of plaintiff's claims against defendants, and the basis for the Court's ruling are laid out in detail in the Court's decision, *Menoken II*, 2017 WL 3479048, so the Court will address the facts only briefly here.

In 1993, plaintiff took the Administrative Law Judge ("ALJ") examination, which was administered by OPM. Am. Compl. [Dkt. # 9] ("*Menoken II* Compl.") ¶ 4. OPM created an ALJ Register using the scores of applicants who had completed the 1993 exam. *Id.* ¶¶ 16, 22. In May of 1994, plaintiff filed an administrative complaint against OPM with the Equal Employment Opportunity Commission ("EEOC Action"),[2] alleging that the examination and selection process violated Title VII by discriminating against African American and female applicants through its design and implementation. *See* Ex. 1 to Defs.' Mot. to Dismiss [Dkt. # 11-2] ("EEOC Order") at 1; *see also Menoken v. Whipple*, 605 F. Supp. 2d 148, 150 (D.D.C. 2009) ("*Menoken I*") (describing the procedural history of plaintiff's case). no

On November 9, 2000, the Administrative Judge presiding over the matter found that a portion of the exam violated Title VII, and he ordered OPM to "cease" use of a scoring benchmark

---

2     Plaintiff clarified in her motion that the claims against OPM were "asserted initially in an administrative complaint filed with OPM per EEOC's regulations." *See* Pl.'s Mem. at 6 n.7, citing 29 C.F.R. § 1614.103 (emphasis omitted).

that awarded points to applicants who were partners at large law firms because it was found to have an "adverse impact on the basis of race." *See Menoken II* Compl. ¶¶ 11–13; EEOC Order at 50, 61. On June 29, 2001, the Administrative Judge ordered OPM to review the scores of all applicants on the 1993 ALJ Register, adjust their scores and rankings if they had been affected, and notify agencies using the 1993 ALJ Register of the discriminatory factor and the EEOC's decision. *See Menoken II* Compl. ¶¶ 13–15, 17–19, 21; Ex. 2 to Defs.' Mot. to Dismiss [Dkt. # 11-3].

In March 2001, OPM issued a certificate to SSA containing the names of eligible candidates for ALJ positions that SSA was seeking to fill. *Menoken II* Compl. ¶ 36. The certificate was based on the 1993 rankings, and plaintiff's name was not included. *Id.* ¶¶ 22, 39. SSA used this certificate to make ALJ selections in April 2001, and it communicated offers to selectees in September 2001. *Id.* ¶ 54.

In August 2003, plaintiff brought an action in the U.S. District Court for the District of Columbia, alleging that OPM "failed to comply" with the EEOC Order and that OPM's administration of the ALJ selection process unlawfully discriminated against African American and female applicants in violation of Title VII. *See Menoken I*, 605 F. Supp. 2d at 151–52. In March 2009, the court granted summary judgment for OPM on all counts, and it explicitly held that OPM was in compliance with the EEOC Order. *Id.* at 152–53.

On January 15, 2016, plaintiff filed the original complaint in this case, asserting Title VII retaliation claims against OPM and SSA. Compl. [Dkt. # 1]. In her amended complaint, plaintiff alleged that in March 2001, two years before she sued OPM the first time, OPM and SSA manipulated the ALJ selection process to deny plaintiff consideration for an ALJ position because she was a "prevailing party" in the 1994 EEOC Action. *See Menoken II* Compl. ¶¶ 36–41, 55; *see*

*also id.* at 10–11. On October 11, 2016, defendants moved to dismiss plaintiff's claims, Defs.'

Mot. to Dismiss [Dkt. # 11], and on August 11, 2017, the Court granted defendants' motion. *See*

*Menoken II*, 2017 WL 3479048.

## STANDARD OF REVIEW

"Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted

only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of*

*Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001), citing *Anyanwutaku v. Moore*, 151 F.3d

1053, 1057 (D.C. Cir. 1998). "A Rule 59(e) motion is discretionary and need not be granted unless

the district court finds that there is an intervening change of controlling law, the availability of

new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*,

355 F.3d 661, 671 (D.C. Cir. 2004), quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir.

1996). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present

evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*,

554 U.S. 471, 485 n.5 (2008), quoting 11 Charles Wright & Arthur Miller, Federal Practice and

Procedure § 2810.1 (2d ed. 1995). Rather, motions to alter or amend a judgment "are intended to

permit the court to correct errors of fact appearing on the face of the record, or errors of law."

*Hammond v. Kempthorne*, 448 F. Supp. 2d 114, 118 (D.D.C. 2006), quoting *Indep. Petroleum*

*Ass'n of Am. v. Babbitt*, 178 F.R.D. 323, 324 (D.D.C. 1998).

## ANALYSIS

Plaintiff does not identify any intervening change of controlling law or new evidence that

would warrant reconsideration of the Court's ruling. So, to prevail on her motion, plaintiff must

demonstrate that it is necessary to alter the Court's judgment in order to correct a clear error or

prevent manifest injustice. *See Firestone*, 76 F.3d at 1208.

Plaintiff argues that reconsideration is warranted because the "Court clearly misapprehended the claim asserted in [the complaint] and the events that gave rise to it," and because the "decision is not in accord with equity principles and applicable law." Pl.'s Mem. at 5, 7. But she fails to show that the Court committed an error of law or judgment, or that manifest injustice will result from the Court's order. Rather, plaintiff "appears merely to disagree with the [Court's] analysis . . ., which is insufficient to trigger reconsideration." *United States v. Nelson*, 59 F. Supp. 3d 15, 20 (D.D.C. 2014) (denying reconsideration where the movant "accused the court of an error of reasoning, not of apprehension"), citing *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 102 (D.D.C. 2005); *see also Rann v. Chao*, 209 F. Supp. 2d 75, 83 (D.D.C. 2002), *aff'd*, 346 F.3d 192 (D.C. Cir. 2003) ("[P]laintiff's disagreement with the court's analysis and conclusions does not satisfy any of Rule 59(e)'s criteria for altering or amending the court's judgment."). Thus, plaintiff's motion will be denied.

I. **Plaintiff has not identified any factual errors that warrant reconsideration.**

Plaintiff contends that reconsideration is warranted because the Court misconstrued the allegations in the complaint. Pl.'s Mem. at 5. Plaintiff predicates her motion on the assumption that the Court derived its understanding of the facts of this case from defendants' motion to dismiss. *See id.* at 1–2, 5 n.6, 7 n.8. But that is incorrect. The Court, as it is required to do, and as the Memorandum Opinion reflects, assumed the facts in plaintiff's *Menoken II* complaint to be true. The motion to dismiss is entitled to no such deference. However, the Court was entitled to take judicial notice of matters on its docket, and the pleadings and decision in the *Menoken I* case and the EEOC Action themselves established what was alleged in those proceedings and what was decided.

First, plaintiff argues that the Court misconstrued her retaliation claim as alleging that OPM and SSA retaliated against her for being a "party" in the EEOC Action rather than a "prevailing party." Pl.'s Mem. at 6. But this distinction is immaterial. Retaliation arises either when an agency takes a materially adverse action against an employee for opposing discrimination by the agency, or when a plaintiff participates in a protected activity under the statute. *See* 42 U.S.C. § 2000e-3(a); *see Baird v. Gotbaum*, 792 F.3d 166, 168 & n.1 (D.C. Cir. 2015) (confirming that the general ban on retaliation in section 2000e-3(a) applies to federal employers through section 2000e-16). Title VII does not contain a requirement that a plaintiff be a "prevailing party." And, in any event, the Court did acknowledge that plaintiff's retaliation claim was based on her prevailing party status when it described plaintiff's claim as alleging that "'OPM was determined to do whatever necessary to ensure that [p]laintiff would not benefit from her *success*' in the EEOC Action." *Menoken II*, 2017 WL 3479048, at *3, quoting *Menoken II* Compl. ¶¶ 40–41 (emphasis added).

Second, plaintiff contends that the Court misread the complaint to allege that OPM and SSA concealed the March 2001 certificate from her in order to hide the fact that OPM had not complied with the EEOC Order. *See* Pl.'s Mem. at 6–7. Plaintiff insists that she "never made such a claim," and she points out that the June 2001 EEOC order did not even exist when "[d]efendants' concealment efforts began" in early 2001. *Id.* But in her complaint, plaintiff claimed that OPM was required to produce all ALJ certificates, including the one issued to SSA in March 2001, as part of discovery in the relief phase of the EEOC Action – which took place *after* the EEOC issued its June 2001 order. *See Menoken II* Compl. ¶¶ 36–39. The point of producing the certificates was to determine whether OPM was in compliance with the EEOC Order at that time – not whether it was acting appropriately when it first issued the certificates. Moreover, plaintiff specifically

alleged that OPM, in collusion with SSA, did not produce the March 2001 certificate because "OPM knew it could not convincingly demonstrate to EEOC that the unlawful scoring factor had not prevented [p]laintiff from being on the certificate." *Id.* ¶¶ 36, 38, 40–41, 47. Thus, the complaint can be fairly read to allege that OPM and SSA withheld the March 2001 certificate because they feared that it would reveal an ongoing failure to comply with the order entered in the liability phase of the EEOC proceedings.

Finally, plaintiff takes issue with the Court's statement that plaintiff "did not allege that SSA took any particular action" against plaintiff. *See* Pl.'s Mem. at 7. She insists that the Court overlooked her allegations that SSA facilitated OPM's retaliation by allegedly taking six months to respond to her FOIA request. *Id.* In its Memorandum Opinion, the Court indeed recognized that plaintiff alleged that SSA and OPM "were colluding" against her. *Menoken II*, 2017 WL 3479048, at *6. But this allegation does not negate the fact that the complaint is devoid of any allegation that SSA took any action that was motivated by its own retaliatory animus.

Therefore, plaintiff has not identified any factual errors in the Court's opinion that would justify reconsideration of its decision.

## II.    Plaintiff has not identified any legal errors that warrant reconsideration.

Plaintiff argues that her case cannot be barred by the "preclusion doctrines," and therefore, it is "not in accord with equity principles and applicable law." Pl.'s Mem. at 7. Plaintiff does not appear to appreciate the difference between the doctrines, or the fact that the Court barred her retaliation claim against OPM under *res judicata* – or claim preclusion – but barred her claim against SSA under issue preclusion. *See Menoken II*, 2017 WL 3479048, at *4–7.

In her motion, plaintiff argues that *Menoken I* and *Menoken II* do not involve the same set of facts for purposes of *res judicata* because *Menoken I* arose in 1993 and this case arose in 2001,

and that the Court erred in concluding that they constitute the same cause of action. Pl.'s Mem. at 7–8. First, plaintiff's disagreement with the Court's analysis and conclusion does not satisfy any of Rule 59(e)'s criteria, so the Court can deny plaintiff's motion to reconsider this part of its opinion on this ground alone. *See Chao*, 209 F. Supp. 2d at 83. In any event, plaintiff does not accurately characterize her complaint in *Menoken I*, which addressed OPM and SSA's use of the March 2001 certificate to recommend and hire ALJs. *See Menoken I*, 605 F. Supp. 2d at 151; *see also Menoken II*, 2017 WL 3479048, at *5. It was plaintiff's inclusion of these allegations in *Menoken I* that precludes her from bringing another claim – based on the same March 2001 certificate – now.

Plaintiff also argues that she could not have expected her claims here to be "subsumed" by her claims in *Menoken I* since she separately exhausted each action. Pl.'s Mem. at 8. But this is not the determining factor; it is irrelevant if she exhausted two separate actions if they each alleged that OPM concealed the March 2001 certificate to SSA in order to avoid compliance with the EEOC Order. Since all of the facts forming the basis of plaintiff's retaliation claim against OPM in this case were present in her *Menoken I* complaint, there is no reason to reconsider the Court's conclusion that these matters constitute the same cause of action for purposes of *res judicata*.

As to her retaliation claim against SSA, plaintiff maintains that "there is no evidence to indicate . . . that . . . it would have been 'convenient' to add SSA as a party" in *Menoken I.* Pl.'s Mem. at 8. The Court is aware that SSA was not a party to *Menoken I*, which is why plaintiff's retaliation claim against SSA could only be barred if the elements of issue preclusion were met. *See Menoken II*, 2017 WL 3479048, at *5. Since the convenience of adding SSA as a party is not a part of the issue preclusion test, plaintiff has not identified any reason for the Court to reconsider its ruling.

**CONCLUSION**

For all of those reasons, it is **ORDERED** that plaintiff's Motion to Alter or Amend the Judgment [Dkt. # 19] is hereby **DENIED**.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE:  November 14, 2017